# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EAST ROCKHILL TOWNSHIP, | : |
|     Plaintiff/Counterclaim Defendant, | : Civil Action No.<br>: 2:18-cv-02382-GAM<br>: (Diversity Jurisdiction) |
| v. | : |
| RICHARD E. PIERSON MATERIALS<br>CORP. d/b/a R.E. PIERSON MATERIALS,<br>INC. and HANSON AGGREGATES<br>PENNSYLVANIA, LLC, | : Originally Filed in the Court of<br>: Common Pleas, Bucks County<br>: Case No. 18-02730 |
|     Defendants/Counterclaim Plaintiffs, | : |
| RICHARD E. PIERSON CONSTRUCTION CO., INC., | : |
|     Additional Counterclaim Plaintiff, | : |
| v. | : |
| EAST ROCKHILL TOWNSHIP BOARD OF SUPERVISORS, GARY VOLOVNIK, DAVID NYMAN, JIM NIETUPSKI, and MARIANNE MORANO, | : |
|     Additional Counterclaim Defendants. | : |

McHugh, J.                                                                 March 6, 2019

## SUPPLEMENTAL MEMORANDUM

This is a zoning dispute arising out of the reactivation of a long dormant quarry, with neighbors near the property understandably dismayed by its coming back to life. A case is still pending before the Zoning Hearing Board in East Rockhill Township. This case arrived in federal court after the Township brought a separate case in the Bucks County Court of Common

Pleas, seeking an order to prevent the owner of the quarry, Hanson Aggregates Pennsylvania, LLC, and the proposed operators, Richard E. Pierson Materials Corp. and Richard E. Pierson Construction Co., Inc., from operating an asphalt plant. Those companies were created under the laws of adjacent states, leading them to invoke the interstate jurisdiction of a federal court because they are not "citizens" of Pennsylvania in the eyes of the law. Numerous residents of East Rockhill Township have submitted letters and emails to this Court expressing their concerns. All such communications were docketed for the sake of transparency and to make clear that the Court had heard their concerns. I treat those communications as informal petitions to intervene in this case and write this memorandum, separate from the main opinion announcing my ruling, to discuss a number of issues that could be puzzling to local residents.

I begin by addressing why this case is in federal court. The answer has historical roots. It is frequently forgotten that once independence was won from England, the United States did not immediately come into existence. Individual colonies had their own laws and customs, and there was reluctance to form a national government of any real power. The Constitution was not ratified until 1788, and the new national government did not commence operation until March 4, 1789, following elections. Among the first bills passed was the Judiciary Act of 1789, which created a system of federal courts. That Act also endorsed the principle that when a dispute involved citizens from different states, a party could request federal jurisdiction. This is known as "diversity jurisdiction." Historically, the doctrine was rooted in lingering suspicions that existed among the states, a concern that citizens from one state might not be fairly treated by the courts in a different state. Such suspicions have largely ceased to exist. Nonetheless, the rule concerning diversity of citizenship has continued in one form or another, and remains a part of federal law, set forth in 28 United States Code § 1332. As a result, parties who are from a state

outside the state where the dispute is pending – like Hanson and Pierson in this case- still have a right to invoke federal jurisdiction. Some defend the continued existence of federal diversity jurisdiction on the ground that federal judges are uniquely independent because they serve for life.

There are multiple claims pending before me. In the longer, more technical decision issued today, I ruled on one issue and declined to rule on another. I proceeded in this way because as to the first issue, Pennsylvania law is clear, and as to the other, it is not. In my view, federal judges should exercise extreme caution in resolving questions more properly addressed by state courts.

As to the issue on which I made a ruling—that Hanson and Pierson are entitled to operate a quarry—I am convinced that such a ruling is required by well-settled Pennsylvania law. The essence of my ruling is that the Township lacks the power to regulate the operation of the quarry. Initially, it is important to understand that every municipality in Pennsylvania, including East Rockhill Township, was created by the Pennsylvania legislature. One of the technical terms for local government is "political subdivision" because each local government is exercising power granted to it by the legislature. Because local governmental entities are entirely dependent on the Commonwealth for their power, it is lawful for the Commonwealth to assert complete control over certain areas of law. The technical legal term for that is "preemption." When it comes to what are known as surface mining activities, including the operation of a quarry, the legislature passed a statute commonly known as the Mining Act. That statute is addressed in detail in the other opinion issued today. For practical purposes, however, the Mining Act establishes that only the Commonwealth, through the Department of Environmental Protection (DEP), has lawful power to regulate the operation of the quarry. DEP imposes rigorous guidelines for the

3

operation of quarries. As to the quarry property in this case, the DEP has proceeded under the Mining Act to issue the various licenses and permits necessary, and has, in meaningful ways exercised its powers of regulation. For example, it has conducted blasting tests, required the improvement of drainage ponds, and tested for asbestos, at times suspending operations.

The communications received by the court from many local residents ask that I prevent the quarry from operating or impose specific limitations on how it must operate. To do so would exceed my authority, just the same as I have ruled it would exceed the authority of Township officials (with some limited exceptions). When federal jurisdiction exists because the dispute is between parties from different states, state law remains controlling, and state law in this case provides that only the Commonwealth of Pennsylvania through the DEP has power to regulate the operation of quarries. For those citizens who attended the three days of hearings in connection with this matter, I tried each day to explain that, as a federal judge, I do not sit as a substitute for the Township Zoning Hearing Board and therefore cannot address many concerns understandably raised by residents. But it is important to recognize that neither can Township officials or the Zoning Hearing Board, because the legislature has reserved such power to the Commonwealth itself. I have therefore ruled that the Township may not limit operation of the quarry, and the concerns of nearby residents must be addressed to DEP.

It also bears mention that in the Municipalities Planning Code—one of the statutes that confers certain powers on local government—every municipality is obligated to designate some area where mining activities can take place because the legislature has concluded that such activities are necessary and in the public interest. That requirement undoubtedly reflects a recognition that facilities such as quarries will seldom be welcome neighbors but are nonetheless

necessary to support infrastructure and carry out important projects, such as the highway improvement at the root of this case.

In practical terms, this conflict here is in some respects a historical accident. The quarry has been dormant, while a residential community has grown around it. But the quarry, though quiet, remained a quarry and remained where it was zoned to be. And for present purposes, pending further inquiry by state authorities, it has been deemed active and therefore entitled to operate by DEP. The reactivation of the quarry may exact a real price from its neighbors in terms of their quality of life, but that impact, real though it may be, does not render the quarry's operation illegal under controlling Pennsylvania law.

As to the second ruling I have issued, concerning the asphalt plant, it is not clear that Pennsylvania law requires that it be allowed to operate. Hanson and Pierson have advanced sophisticated arguments as to why it should be allowed, but no Pennsylvania statute addresses such a right, and a decision from the Pennsylvania Supreme Court weighs strongly against it. Under a doctrine known as abstention, I may decline to issue declarations about Pennsylvania law if that law is unclear, because state law should in the first instance be developed by the state courts. That is particularly true in cases of intense local concern, such as proper land use. The issue of the asphalt plant will be remanded back to state court.

In conclusion, though I recognize the concerns of those who have submitted communications to the Court, I cannot usurp the legal authority clearly vested in the Pennsylvania Department of Environmental Protection.

    /s/ Gerald Austin McHugh
United States District Judge